**BILLY J. WILLIAMS, OSB #901366**
United States Attorney
District of Oregon
**AMY E. POTTER**
amy.potter@usdoj.gov
Assistant United States Attorney
405 E. 8th Street, Suite 2400
Eugene, Oregon 97401-2708
Telephone: (541) 465-6771
Attorneys for the United States

<br>

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## MEDFORD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | 1:19-cv-00578-MA |
| Plaintiff, | |
| | COMPLAINT |
| v. | |
| $25,000.00 U.S. Currency, *in rem*, | |
| Defendant. | |

Plaintiff, United States of America, by Billy J. Williams, United States Attorney for the District of Oregon, and Amy E. Potter, Assistant United States Attorney, for its complaint *in rem* for forfeiture, alleges:

I.

This Court has subject matter jurisdiction, *in rem* jurisdiction, and venue pursuant to 21 U.S.C. § 881; 28 U.S.C. §§ 1345, 1355, 1356, and 1395; and 19 U.S.C. § 1610.

II.

Defendant, *in rem*, $25,000.00 U.S. Currency, was seized in the District of Oregon, and is now and during the pendency of this action will be within the jurisdiction of this Court.

III.

Defendants, *in rem*, $25,000.00 U.S. Currency represents proceeds traceable to an exchange for controlled substances or were used or intended to be used to facilitate such a transaction in violation of 21 U.S.C. §§ 841 and 841(a)(1), and is forfeitable to the United States pursuant to the provisions of 21 U.S.C. § 881(a)(6), as more particularly set forth in the declaration of Clark Wheeler, Special Agent, Drug Enforcement Administration, marked as Exhibit A, attached and fully incorporated herein by this reference.

WHEREFORE, plaintiff, United States of America, prays that due process issue to enforce the forfeiture of defendant, *in rem*, $25,000.00 U.S. Currency, et. al.; that due notice be given to all interested persons to appear and show cause why forfeiture of these defendants, *in rem*, should not be decreed; that due proceedings be had thereon; that these defendants be forfeited to the United States; that the plaintiff United States of America be awarded its costs and disbursements incurred in this action.

DATED: **April 17, 2019.**          Respectfully submitted,

                                        BILLY J. WILLIAMS
                                        United States Attorney

                                        *s/ Amy E. Potter*
                                        **AMY E. POTTER**
                                        Assistant United States Attorney

## VERIFICATION

I, Clark Wheeler, declare under penalty of perjury, pursuant to the provisions of 28 U.S.C. Section 1746, that I am a Special Agent with the Drug Enforcement Administration and that the foregoing Complaint *in rem* for Forfeiture is made on the basis of information officially furnished and upon the basis of such information the Complaint *in rem* for Forfeiture is true as I verily believe.

<u>s/ Clark Wheeler</u>
**CLARK WHEELER**
Special Agent
Drug Enforcement Administration

# DECLARATION OF CLARK WHEELER

I, CLARK WHEELER, do hereby declare:

## BACKGROUND/EXPERIENCE

1. I am a Special Agent (SA) with the United States Department of Justice, Drug Enforcement Administration (DEA), and have been so appointed since February 1998. I am currently assigned to the Medford Resident Office. During my tenure, I have conducted or assisted in numerous investigations of criminal violations of the Controlled Substances Act and federal drug trafficking statutes. Many of these investigations focused on individuals who have distributed, manufactured, or derived assets or income from illegal sources, specifically from the unlawful distribution of controlled substances. Prior to my hiring by DEA, I worked as a credit union teller, accountant, and internal auditor. I have a Bachelor's Degree in Business Administration, cum laude from the University of Portland, with a finance major.

2. During my employment as a DEA SA, I have participated in multiple investigations involving the above knowledge and skills. I know from my training and experience that controlled substance traffickers and their criminal associates use cash to hide illicit income from law enforcement and avoid paying taxes on that illicit income. I also know that because most banks and financial institutions do not accept the deposits of marijuana proceeds, many marijuana producers pay for labor and materials in cash.

## PURPOSE OF THIS DECLARATION

3. This declaration is in support of a civil forfeiture complaint for $25,000.00 U.S. Currency seized on October 16, 2018 in Medford, Oregon from a black duffel bag

belonging to Taquoris Richardson. This declaration does not include all of the facts known to me regarding this investigation, only those sufficient to establish probable cause to seize the above referenced asset. As discussed below, I believe there is probable cause that the $25,000.00 is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as it constitutes moneys intended to be furnished by any person in exchange for a controlled substance in violation of 21 U.S.C. § 841, specifically marijuana, a schedule I controlled substance, or moneys used or intended to be used to facilitate any violation of 21 U.S.C. § 841(a)(1), specifically the manufacture and distribution of marijuana.

## SUMMARY OF THE INVESTIGATION

4. On October 16, 2018, DEA SA Joseph Lyons and I approached Taquoris Richardson at the Rogue Valley International-Medford Airport located at 1000 Terminal Loop Parkway, Medford, Oregon. Richardson had just de-boarded a Delta Flight from Salt Lake City, Utah and was carrying a black duffel bag with "Paco" embroidered in white on the front of the bag. SA Lyons told Richardson that he wanted to ask him some questions regarding his travel. DEA Medford Resident Agent in Charge (RAC) Phillip Kearney, SA Lyons, Richardson, and I then walked to a conference room in the airport. On the way to the conference room, SA Lyons asked Richardson from where he was flying and Richardson said that he was flying from Atlanta, Georgia. Richardson had a layover at Salt Lake City, Utah, and travelled on to Medford, Oregon.

5. Upon arriving in the conference room, SA Lyons asked Richardson why he was in Medford. Richardson advised that he was travelling to San Francisco via Medford. SA Lyons asked Richardson if he had a flight booked to San Francisco and Richardson

**Declaration of Clark Wheeler**  **EXHIBIT A PAGE 2**

said that he did not. SA Lyons asked Richardson why he was going to San Francisco and Richardson said he was travelling to San Francisco for business. Richardson said his business related to a restaurant he owned but he did not want to elaborate on what the business was. Richardson later added that he had family in San Francisco and would afterwards travel on to Los Angeles. SA Lyons asked Richardson what family he had in San Francisco and Richardson advised that he had a brother, later clarifying that by brother he meant a friend whom he referred to as a "bro" and that they were not related by blood. Richardson stated that his "brother" was former NBA basketball player Al Harrington. Richardson said that he did not know Al Harrington's address.

6. SA Lyons asked Richardson where Richardson was staying the night in Medford and Richardson said he was staying at a hotel. SA Lyons asked Richardson if he had a reservation for a hotel and Richardson said that he did not. SA Lyons asked what hotel Richardson planned on staying at and Richardson was unable to give a name of a hotel. SA Lyons asked if Richardson had any reservations in San Francisco and Richardson said that he did not. SA Lyons asked Richardson if he had ever been to Medford before and Richardson said that he had never been to Medford before. SA Lyons asked Richardson if he was going to meet anyone in the Medford area and Richardson said that he was not going to meet anyone in Medford. Richardson said that he was going to use a cab to get to the hotel. SA Lyons asked Richardson what he intended to do in Medford and Richardson said that he intended to go shopping and see the sights that Medford has to offer.

7. During the interview, I asked Richardson if I could search Richardson's black duffel bag and Richardson said yes. During the search, I found $25,000.00 inside the

black duffel bag. I also asked to search Richardson and he said yes. I searched Richardson's person and found two cellular phones inside Richardson's pockets. One phone was a black smart phone and the other was a black flip phone. RAC Kearney asked Richardson if he had recently purchased the black flip phone but Richardson said that he had owned the black flip phone for a while. RAC Kearney asked Richardson the number of the black flip phone but Richardson could not remember the number. Richardson then called RAC Kearney with the black flip phone which revealed the number to be (404) 735-xxxx.

8. At this point, SA Lyons asked where Richardson had obtained the $25,000 and Richardson said that he owned a restaurant and the currency was proceeds from the restaurant. Richardson then stated that he had withdrawn the currency from a bank but that he did not wish to reveal from which bank it had been withdrawn. Richardson stated that he was going to use the currency to go shopping.

9. SA Lyons asked Richardson when Richardson bought the plane ticket Richardson was traveling on. Richardson reported that his wife had bought the ticket the day before on his behalf. SA Lyons asked Richardson how long he had planned on making the trip and Richardson said that he had planned to make the trip for several months. SA Lyons asked why Richardson would wait to the last day to buy the ticket and Richardson reported that he had wanted to wait until the end of his son's sports league.

10. SA Lyons then told Richardson that he did not believe his story. SA Lyons told Richardson that he believed he had brought the currency to Medford to purchase marijuana. Richardson denied this and tried to explain that this amount of currency would

not make sense in a marijuana deal since marijuana was likely to cost $700-$800 per pound "depending on the quality."

11. I then asked Richardson about his criminal history. Richardson said that he had been arrested in 2004 and spent several years in prison for conspiracy. Richardson stated that this had been, "regarding cocaine and not marijuana."

12. Toward the end of the interview, Richardson received and answered a call on his black flip phone. RAC Kearney was sitting near Richardson and was able to hear both ends of the conversation. RAC Kearney recognized the caller's voice as a male voice with a strong Southern accent. The following is the conversation that RAC Kearney overheard.

> Unknown caller: *Are you here?*
> Richardson: *We are on hold.*
> Unknown caller: *Why?*
> Richardson: *I'm up here with the DEA in the airport.*

The unknown caller asked Richardson what to do and Richardson told the unknown caller that Richardson would call back.

13. RAC Kearney asked Richardson about Richardson's occupation and Richardson stated that he owned the Green Acres Café located at 2405 Center Point Parkway, Birmingham, Alabama. Richardson stated that he and his wife had bought the franchised restaurant in 2005 with his wife was the sole proprietor because Richardson was under indictment. Richardson did not remember how much he paid for the restaurant nor how he had obtained the funds for the restaurant. Richardson stated that the restaurant employs between 6-10 people and that his wife is the sole proprietor. RAC Kearney asked Richardson how much the restaurant makes each year and Richardson said he did

not know. Richardson made a phone call to apparently his wife and asked how much she had put on the business tax return for the previous year. Richardson then told RAC Kearney that his wife had told him that she put approximately $411,000 as the business income during the previous year.

14. At the end of the interview, I seized the $25,000.00 and sealed it in a self-sealing evidence envelope. Richardson took his bag and left the airport. Investigators surveilled Richardson as he walked from airport to the lobby of the Comfort Inn, 2280 Biddle Road, Medford before surveillance of Richardson was terminated.

15. On October 22, 2018, SA Lyons sent an administrative subpoena to AT&T regarding the black flip phone with the number (404) 735-xxxx. SA Lyons received a return of this subpoena on October 23, 2018 that revealed the phone was a pre-paid customer and that service on this phone had started on September 5, 2018. This was not consistent with Richardson's statement that he had the phone for "a while." In my training and experience, the black flip phone fits the description of a "burner phone." Burner phones are often used by drug traffickers to maintain anonymity and keep the drug business separate from the other parts of their life. Burner phones are often not used for long periods of time and frequently changed. For these reasons, many burner phones are often cheaper flip cellular phones rather than smart phones which are more expensive.

16. In my training and experience, I have found it common for marijuana buyers from various East Coast locations to travel to the Medford, Oregon area. Southern Oregon has a climate suitable for growing high-grade marijuana and the prices for marijuana are much lower than those on the East Coast. Marijuana traffickers can often triple or quadruple profits by purchasing the marijuana in Oregon and shipping it back to

the East Coast. Often times, marijuana buyers will buy last-minute tickets once a marijuana deal has been negotiated. Since marijuana proceeds are not allowed to be deposited in the federal banking system, marijuana traffickers often bring U.S. Currency to purchase marijuana.

17. In addition to the above, there were several parts of Richardson's story that made me believe the currency was brought to Medford to purchase marijuana. Richardson stated that he had come to Medford for tourism and shopping. Medford does not have large malls or shopping centers compared to other cities around the country. Since Richardson claimed that he did not know anyone in the Medford area, his answer as to why he was flying to Medford with $25,000.00 for shopping was inexplicable when he could have flown directly to San Francisco or Los Angeles and found larger shopping centers. I was also skeptical that he was going to travel to San Francisco or Los Angeles since he had no reservations to travel to either city. In addition, the conversation that RAC Kearney heard between Richardson and an unknown caller contradicted Richardson's claims that he was not going to meet anyone in Medford. The unknown caller asked if Richardson "was here yet," indicating that the unknown caller was planning to meet Richardson in Medford.

## CONCLUSION

18. Based on the foregoing and my training and investigative experience, I have probable cause to believe that the $25,000.00 in U.S. Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) as it constitutes moneys intended to be furnished by any person in exchange for a controlled substance in violation of 21 U.S.C. § 841,

specifically marijuana, a schedule I controlled substance, or moneys used or intended to be used to facilitate any violation of 21 U.S.C. § 841(a)(1), specifically the manufacture and distribution of marijuana.

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. §1746.

Executed this 16th day of April, 2019.

Clark Wheeler
Special Agent
Drug Enforcement Administration

**Declaration of Clark Wheeler**                                                   **EXHIBIT A PAGE 8**

JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)    and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| | | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee | | |
| | | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN   (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing  (**Do not cite jurisdictional statutes unless diversity**):

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____